1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JAMES W. MILLNER,                        No.  2:19-CV-1311-JAM-DMC

12                    Petitioner,

13          v.                                 <u>FINDINGS AND RECCOMENDATIONS</u>

14   SCOTT FRAUENHEIM,

15                    Respondent.

16

17          Petitioner, a state prisoner proceeding with retained counsel, brings this petition

18   for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the Court is

19   respondent's motion to dismiss (ECF No. 11).  The parties appeared before the undersigned for

20   oral arguments on December 11, 2019, at 10:00 a.m. Diane Therese Letarte, Esq., appeared for

21   petitioner. Tami M. Krenzin, Esq., appeared for respondent.  Following arguments, the matter

22   was submitted.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                               1

# I. BACKGROUND

A.     **State Court Proceedings**

Petitioner was convicted following a jury trial of second-degree murder of his wife, Ila Lavine Millner (Mrs. Millner) and the attempted murder of his son, Adam Millner, who was 16 years old at the time of the offense. See ECF No. 1, pg. 12. The trial court sentenced defendant to prison for a total of 65 years to life. Id. Petitioner appealed the sentence. Id. On October 5, 2009, the California Court of Appeal remanded the matter back to the trial court to resentence petitioner on count two, the attempted murder of Adam Millner. Id. In all other respects, the judgment was affirmed. Petitioner then filed a timely petition for review with the California Supreme Court. Id. That petition was summarily denied on December 23, 2009. On March 12, 2010, the Shasta County Superior Court resentenced petitioner to a determinate state prison term of nine years for the attempted murder. See ECF No. 11, pg. 2. Petitioner did not appeal the resentence. Id.

Petitioner then filed the following petitions for writs of habeas corpus in state court:

First Action          Shasta County Superior Court
                      Filed November 13, 2017
                      Denied April 3, 2018; see ECF No. 1,
                      pg. 13

Second Action         California Court of Appeal
                      Filed May 10, 2018
                      Denied September 6, 2018; see id.

Third Action          California Supreme Court
                      Filed September 19, 2018
                      Denied May 22, 2019; see id.

B.     **New Alleged Facts at Issue**

According to petitioner:

After years of estrangement following the murder of James Millner's wife and the attempted murder of his son (Adam), James and Adam slowly reconciled over those years, and eventually began communicating again. During a phone call and correspondence in 2017, Adam Millner, the son, told James Millner, Petitioner, that statements Adam made to the prosecutor pre-trial including the use and condition of the firearm used in this offense were contrary to what the prosecutor

presented as evidence and argument during trial. This fact came about
when father and son were discussing the events of the day of the offense
and the course of the trial, following years of estrangement and no
communication between them. This false evidence was pivotal in the
prosecutor's theory of the guilt of James Millner.

ECF No. 1, pg. 10.

The petition includes a declaration from Adam Millner which, among other things,
clarifies that:

> 14. [A friend] and I took the gun outside and shot several rounds of
> ammunition [. . .] We saved 7 bullets [. . .] and returned the gun to its
> usual storage place inside my house. I loaded those hollow-point bullets in
> the gun, not my father. We placed the gun back where it was stored with
> the 7 bullets loaded in the gun and the slide mechanism pulled back, just
> as we always stored the gun. The gun would then be ready to fire by
> pushing a button on the side of the gun. That automatically chambered a
> round, so the gun would be ready to fire. The button on the side of the gun
> could be unintentionally pushed when the gun was grabbed, or during a
> struggle over the gun between two persons.
>
> 15. This is the condition the gun was in on the evening of the
> events of January 5-6, 2006.
>
> 16. I told the DA interviewer this same, exact information when I
> was interviewed following the incident on January 6, 2006. Thus, the DA
> knew that there was no need to load the clip or cock the gun before it was
> ready to fire.

ECF No. 1, pg. 33; see also ECF No.1-1, pgs. 5-6.

**C.**     **Current Federal Petition**

On July 14, 2019, petitioner filed a petition for writ of habeas before this Court.
See ECF No. 1. Petitioner seeks habeas relief in the form of an order reversing his 2007
convictions for second-degree murder and attempted murder. Id. at 9-10. Based on newly
acquired information, petitioner alleges that he has only recently become aware that the
prosecutor knowingly presented false information during trial. Id.

On September 13, 2019, respondent filed a motion to dismiss, arguing that
petitioner's petition was filed beyond the one-year statute of limitations under 29 U.S.C.
§ 2244(d). See ECF No. 11. On September 25, 2019, petitioner filed an opposition to
respondent's motion to dismiss. See ECF No. 16. Petitioner contends that any untimeliness
regarding his petition is excused by both statutory exceptions and the doctrine of equitable tolling.

On October 18, 2019, respondent filed a reply to petitioner's opposition. See ECF No. 18. Respondent argues that petitioner is not entitled to statutory tolling or any other statutory consideration which would prevent the petition from being deemed untimely.  Lastly, on November 16, 2019, petitioner filed an objection to respondent's reply. See ECF No. 19. Petitioner claims that respondent's reply constitutes nothing more than a "second bite of the apple."

        **D.**      **December 12, 2019 Hearing**

Following the submissions above, the Court held a hearing held on December 11, 2019. At the hearing both parties presented oral arguments. At issue was whether petitioner's petition exceeded the statute of limitations period. Counsel for respondent argued that the petition was filed well beyond the one-year limitations period. Counsel for petitioner argued that petitioner is entitled to tolling which would make the petition timely. The Court found Adam Millner's trial testimony to be dispositive of this issue and directed respondent to lodge with the Court all portions of the state court record containing Adam Millner's trial testimony, including direct and cross-examination. See ECF No. 25. On December 17, 2019, respondent submitted the following documents in response to the Court's order:

1. Adam Millners pretrial statement (with re-enactment) (1-9- 2006). ECF No. 26.

2. Petitioners police interview (including reference to Adam Millners pretrial statement) (2-14-2006). Id.

3. Preliminary hearing (4-6-2006). Id.

4. Adam Millners initial trial testimony (6-12-2007). Id.

5. Prosecution brief to admit Adam Millners pretrial statement (6-15-2007). Id.

6. Defense brief opposing admission of Adam Millners pretrial statement (6-17-2007). Id.

7. Adam Millners trial testimony on recall (6-19-2007). Id.

///

///

///

4

1      **II. DISCUSSION**

2              In his motion to dismiss, respondent argues petitioner's habeas petition is untimely

3      because it was filed beyond the one-year limitations period proscribed by Congress.   In

4      opposition, petitioner argues that his petition is not untimely because: (1) he is entitled to a later

5      start date for the one-year limitations period; and (2) he is entitled to equitable tolling. Upon

6      review of the record, the Court finds that petitioner is entitled to tolling and his petition is timely.

7              Federal habeas corpus petitions must be filed within one year from the later of: (1)

8      the date the state court judgment became final; (2) the date on which an impediment to filing

9      created by state action is removed; (3) the date on which a constitutional right is newly-

10     recognized and made retroactive on collateral review; or (4) the date on which the factual

11     predicate of the claim could have been discovered through the exercise of due diligence.  <u>See</u> 28

12     U.S.C. § 2244(d).  Typically, the statute of limitations will begin to run when the state court

13     judgment becomes final by the conclusion of direct review or expiration of the time to seek direct

14     review.  <u>See</u> 28 U.S.C. § 2244(d)(1).

15             Where a petition for review by the California Supreme Court is filed and no

16     petition for certiorari is filed in the United States Supreme Court, the one-year limitations period

17     begins running the day after expiration of the 90-day time within which to seek review by the

18     United States Supreme Court.  <u>See</u> <u>Patterson v. Stewart,</u> 251 F.3d 1243, 1246 (9th Cir. 2001).

19     Where a petition for writ of certiorari is filed in the United States Supreme Court, the one-year

20     limitations period begins to run the day after certiorari is denied or the Court issued a merits

21     decision.  <u>See</u> <u>Wixom v. Washington,</u> 264 F.3d 894, 897 (9th Cir. 2001).  Where no petition for

22     review by the California Supreme Court is filed, the conviction becomes final 40 days following

23     the Court of Appeal's decision, and the limitations period begins running the following day.  <u>See</u>

24     <u>Smith v. Duncan,</u> 297 F.3d 809 (9th Cir. 2002).  If no appeal is filed in the Court of Appeal, the

25     conviction becomes final 60 days after conclusion of proceedings in the state trial court, and the

26     limitations period begins running the following day. <u>See</u> Cal. Rule of Court 8.308(a).  If the

27     conviction became final before April 24, 1996 – the effective date of the statute of limitations –

28     the one-year period begins to run the day after the effective date, or April 25, 1996.  <u>See</u> <u>Miles v.</u>

5

1   Prunty, 187 F.3d 1104, 1105 (9th Cir. 1999).

2         **A.**     **The Limitations Period Begins**

3         Here, petitioner did not seek certiorari in the United States Supreme Court

4   following denial of his petition for review by the California Supreme Court. Nor did he appeal the

5   subsequent resentencing on March 12, 2010 to the California Court of Appeal. Thus, the one-year

6   limitations period began to run on May 12, 2010. See Cal. Rule of Court 8.308(a). Absent tolling,

7   petitioner's federal habeas petition was due by May 11, 2011.  In response to respondent's motion

8   to dismiss, petitioner argues that he is entitled to a later start date of the limitations period under

9   28 U.S.C. § 2244(d)(1)(B) and (D)[1]. See ECF No. 16, pgs. 4-6.

10         1.     28 U.S.C. § 2244(d)(1)(D)

11         Under subsection (D), in certain circumstances the one-year limitation period

12   commences on "the date on which the factual predicate of the claim or claims presented could

13   have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

14         Petitioner argues that:

15         The prosecution was in possession of evidence, which was crucial
16   to the defense in this case (knowledge that the gun used in the offense was stored in a condition of already being loaded and cocked, with a bullet in the firing chamber), yet not only did the prosecution *not provide* that
17   information to the defense (Brady violation), but argued the case extensively to the contrary (that *only defendant* could have cocked the gun
18   before firing it). This same information was essential to the proper adjudication of Mr. Millner's Trombetta/Youngblood motion during trial.
19   Please see Petition at pp. 29-30.

20         * * *

21         The fact that the prosecution was in possession of this evidence-
22   information did not, and *could not have been discovered by Mr. Millner until a reconciliation occurred between him and his son*, Adam, who was
23   the victim of the attempted murder in this case. Please see Petition at pp. 30-38.

24         ECF No. 16, pgs. 5-6.

25   ///

26   ///

27        [1]     Here, petitioner's heading refers to "28 U.S.C. § 2244(d)(1)(B) and (C)."
28   However, from the added italics and the substance of petitioner's argument, it is clear petitioner seeks to make an argument under subsections "(B)" and "(D)."

In response, respondent states in his reply that:

> Petitioner argues the limitations period should have commenced sometime in 2017 (no specific date is given), when he discovered the information contained in his son's declaration. (Dkt. 16 at 3, 6.) But Petitioner would have already known the factual predicate of his claim—that the family "always kept the gun loaded with the slide pulled back." In a pre-trial statement, Petitioner stated that the gun was always stored loaded, that he did not pull the hammer back prior to shooting the victim, and he believed that the gun may have already been cocked when he took it away from her. (*See* II CT at 432, 474-75; III CT at 610.) The son's declaration was only evidence of what Petitioner would have already known about the gun's storage. And even if prior to the murder, Petitioner's son had fired the gun and stored it as the family always did—loaded with the slide pulled back—that only arguably lends support for what Petitioner already knew about how he and his family "always" stored the gun. The discovery of evidence to support known facts does not trigger a later start date of the limitations period. See Flanagan v. Johnson, 154 F.3d at 199 (distinguishing between knowledge of factual predicate and evidence in support of claim); McAleese v. Brennan, 483 F.3d 206, 214 (3d Cir. 2007) (petitioner "has confused the facts that make up his claims with evidence that might support his claims").

ECF No. 17, pgs. 3-4

Here, Adam Millner's declaration is not simply evidentiary support, but a factual predicate of petitioner's claim. This newly discovered information does not merely supplement the previously known fact that the family "always kept the gun loaded with the slide pulled back" but also, and more importantly, suggests that the gun was in fact easy to fire at the time of the shooting. ECF No. 1-1, pg. 4. From the petition, it is clear that the physical difficulty of prepping the murder weapon to fire was an integral part of dispelling petitioner's self-defense claim.

According to petitioner:

> An absolutely crucial point in the prosecution argument in this series of events is that even if [Mrs. Millner] was the person who first pulled the gun, she would be incapable of cocking the gun so that it could be fired, because it took considerable effort to pull back the hammer of the gun. . . The implication and prosecution argument were that Petitioner could be the only one to cock the gun, and had to deliberately do so prior to firing the shots.
> This element of the prosecution's argument was so crucial, that he had each juror cock the hammer of the actual gun used and then pull the trigger of the unloaded weapon, to see the force necessary to cock the gun and pull the trigger . . .

ECF No. 1, pgs. 25-26.

1    While at trial, petitioner asserted the likelihood of the weapon's ready-to-fire state.

2  However, petitioner did not know, and thus did not argue at trial, that the weapon was in fact

3  pulled back and ready to fire on the day of [Mrs. Millner's] death.[2] While the distinction between

4  the gun *likely* being cocked and the gun *in fact* being cocked at the time of the shooting may seem

5  minor in a vacuum, in this context the clarification it provides warrants consideration. See

6  Johnson v. Yates, No. CIV S-09-0850 JAM GGH P, 2010 U.S. Dist. LEXIS 17238, at *14 (E.D.

7  Cal. Feb. 26, 2010) (". . . the *key* evidence supporting a claim might not have been available with

8  due diligence until a time much later than the basic assertion of an "I was not the shooter" claim.

9  No matter how sincere one is in the assertion, the *real* factual predicate might not be known until

10  the significant external-to-the-defendant evidence is surfaced. This might have been one of those

11  cases. . .").

12    Whether the gun was in fact cocked before the shooting began was integral to both

13  parties' arguments at trial. Both petitioner's self-defense theory and the prosecution's discrediting

14  of that theory hinged on whether the jury believed that Mrs. Millner was capable of firing the gun

15  at the time of the incident. As such, there is a significant distinction between the testimony

16  presented at trial that it was common practice to store the gun cocked and Adam Millner's recent

17  declaration stating that the gun was actually cocked because he had left it in that state hours prior

18  to the incident. Therefore, Adam Millner's declaration presents a factual predicate of petitioner's

19  current claim.

20    Additionally, respondent's argument that petitioner failed to exercise diligence in

21  discovering this new information is unconvincing. Respondent argues in his reply that

22  "[p]etitioner had access to his son at trial when his son testified. Petitioner could have cross-

23  examined his son at trial about the family's practice of storing the gun." ECF No. 17. Pg. 4. As

24  discussed above, the firearm's readiness to shoot was significant to both prosecution and defense

25  theories at trial. However, from the record submitted to the Court as of December 11, 2019, it was

26  unclear whether any available statement made by Adam Millner at the time of trial would have

27

28  [2]    As suggested by Adam Millner's declaration. See ECF No. 1-1, pgs. 3-6.

8

put defense counsel on notice to inquire about whether Adam had used the firearm on the date of the incident. As such, after the hearing on December 11, 2019, the Court directed respondent to submit all portions of the state court record containing Adam Millner's trial testimony, including direct and cross-examination. See ECF No. 25.

Upon review of the record, it is clear that defense counsel did in fact question Adam Millner at trial regarding the family practice of storing the firearm:

Q:    Do you know where that gun was kept in the bedroom?

A:    Gun was a number of places it was put.

Q:    Can you name some of them?

A:    The safe, by the T.V., top of my dad's closet or up by 25 his headboard.

* * *

Q:    Do you know how -- if your dad kept it loaded?

A:    Occasionally, yes.

Q:    When he kept it by the bed, did he keep it loaded?

A:    Occasionally.

Q:    When he did keep it loaded, do you know if he kept a round in the chamber?

A:    No

Q:    Do you know if he kept the safety on?

A:    Yeah, he had the safety on.

Q:    So he would have the safety on?

A:    Yes.

Q:    Do you know if he kept it cocked?

A:    There's a chance it can be sometimes

ECF No. 26-4, pgs. 22-23.

///

///

///

1    However, as discussed above, the factual predicate of petitioner's claim here is not

2    that it was common family practice to store the gun cocked, but that the gun was in fact cocked

3    because Adam Millner had left it in that state earlier that day. No statement made by Adam

4    Millner in the trial record suggests that he had in fact stored the firearm in a cocked position at the

5    time of the incident. Therefore, nothing in the record would have put defense counsel on notice

6    that the Adam Millner had manipulated the firearm before the incident, and defense counsel's

7    failure to cross-examine him on that fact cannot reasonably be considered a lack of diligence on

8    the part of petitioner. As such, petitioner is entitled relief under § 2244(d)(1)(D).

9                    2.      28 U.S.C. § 2244(d)(1)(B)

10    Under subsection (B), in certain circumstances the one-year limitation period

11    commences on "the date on which the impediment to filing an application created by State action

12    in violation of the Constitution or laws of the United States is removed, if the applicant was

13    prevented from filing by such State action[.]" 28 U.S.C. § 2244(d)(1)(B).

14    Petitioner argues that he is entitled to a later start date for the limitations period

15    under subsection (B) for the same reasons he articulates in his discussion under subsection (D).

16    See ECF No. 16, pgs. 4-6. In his reply to petitioner's opposition, respondent argues that:

17    > The prosecution's alleged actions or inactions did not "impede"
18    > him from actually filing a federal habeas petition on time—there is no
     > allegation that government actors were thwarting his attempts to timely
19    > file. Rather, Petitioner claims the prosecution withheld evidence from him
     > that kept him from discovering his claim. But an impediment is
20    > determined based on whether the petitioner was free to file a federal
     > habeas petition—not whether the prosecution allegedly kept him from
21    > discovering his claim. *See Randle v. Crawford*, 604 F.3d 1047, 1055 (9th
     > Cir. 2010) (citing *Shannon v. Newland*, 410 F.3d at 1087-88).

22    ECF No. 17, pg. 5.

23    Here, respondent's arguments are persuasive. As mentioned in respondent's reply,

24    the 9th Circuit has held that:

25    > The limited case law applying § 2244(d)(1)(B) has dealt almost
     > entirely with the conduct of state prison officials who interfere with
26    > inmates' ability to prepare and to file habeas petitions by denying access to
     > legal materials. See, e.g., Whalem/Hunt v. Early, 233 F.3d 1146 (9th Cir.
27    > 2000) (en banc); Egerton v. Cockrell, 334 F.3d 433 (5th Cir. 2003). A
     > plurality of the Supreme Court has also suggested that the provision would
28    > apply if a "state court . . . refused to rule on a constitutional claim that

1
2
3

had been properly presented to it." Lackawanna County Dist. Att'y v. Coss, 532 U.S. 394, 405, 149 L. Ed. 2d 608, 121 S. Ct. 1567 (2001) (plurality op. of O'Connor, J.). These cases comport with the plain meaning of the provision, which applies when a petitioner has been impeded from *filing* a habeas petition.

4

Shannon v. Newland, 410 F.3d 1083, 1087-88 (9th Cir. 2005).

5

Here, the basis of petitioner's argument is not that he has been impeded from filing

6   his habeas petition by State action. Instead, it is that, because of the prosecution's withholding of

7   information, there was no reason to file such a petition until after petitioner's discussion with his

8   son years later. Petitioner does not present prior authorities which grant subsection (B) such a

9   broad reading and application. Therefore, while petitioner is entitled to a later start date under 28

10  U.S.C. § 2244(d)(1)(D), as discussed above, petitioner is not entitled to a later start date under 28

11  U.S.C. § 2244(d)(1)(B).

12          **B.    <u>Equitable Tolling</u>**

13          Petitioner also argues that any untimeliness of his federal petition should be

14  excused under the doctrine of equitable tolling.

15          A litigant seeking equitable tolling bears the burden of establishing two elements:

16  (1) that they have been pursuing their rights diligently, and (2) that some extraordinary

17  circumstance stood in their way. <u>See</u> <u>Holland v. Florida</u>, 560 U.S. 631, 645 (2010); <u>see</u> <u>also</u> <u>Pace</u>

18  <u>v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005). "This is a very high bar, and is reserved for rare

19  cases." <u>Yeh v. Martel</u>, 751 F.3d 1075, 1077 (9th Cir. 2014). To be entitled to equitable tolling, the

20  "petitioner must [] show that the extraordinary circumstances made it impossible to file a petition

21  on time." <u>Ramirez v. Yates</u>, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and

22  citations omitted). It is the petitioner's burden to establish that he is entitled to equitable tolling.

23  <u>See</u> <u>Espinoza-Matthews v. California</u>, 432 F.3d 1021, 1026 n.5 (9th Cir. 2005).

24          In his opposition to respondent's motion to dismiss, petitioner argues that he is

25  entitled to equitable tolling for the same reasons he is entitled to a later start date for the

26  limitations period. <u>See</u> ECF No. 16, pgs. 7-10. Similarly, respondent contends that petitioner is

27  not entitled to equitable tolling for the same reasons he articulates in his opposition to petitioner's

28  arguments for a later start date. <u>See</u> ECF No. 17, pgs. 5-6. "In order to receive the benefit

1   of equitable tolling, Petitioner must establish he has been pursuing his rights diligently." <u>Vasquez</u>

2   <u>v. Pliler</u>, No. 03cv2194 DMS (WMC), 2010 U.S. Dist. LEXIS 51859, at *17 (S.D. Cal. May 26,

3   2010) (citing <u>Pace</u>, 544 U.S. at 418).

4            As discussed above, petitioner's failure to cross-examine Adam Millner on the true

5   storage status of the firearm at trial was not the result of a failure in diligence on the part of

6   petitioner. Nothing in the record at trial would have put defense counsel on notice to inquire about

7   Adam Millner's involvement with the weapon. According to petitioner, father and son reconciled

8   after years of estrangement and on April 2017, Adam Millner told petitioner that he left the

9   firearm "ready to fire by pushing a button on the side of the gun" on the night of the incident.

10  ECF No. 1-1, pgs. 5-6. According to Adam Millner's sworn declaration, he told the district

11  attorney this information when he was interviewed following the incident on January 6, 2006. <u>Id.</u>

12  Since he was only present at petitioner's trial to testify as a victim-witness, Adam Millner also

13  states that he was unaware that the prosecution omitted his personal involvement. <u>Id.</u> Both he and

14  petitioner claim that neither was aware of this omission until their conversation on April 2017. <u>Id.</u>

15  Thus, petitioner has demonstrated an extraordinary circumstance preventing him from submitting

16  this appeal within the one-year limitations period and the Court finds he is also entitled to

17  equitable tolling.

18            **C.    <u>The Limitations Period Ends</u>**

19            As discussed above, petitioner is entitled to tolling because the predicate of his

20  claim did not become known to him until his conversation with his son, Adam Millner, on April

21  2017[3]. Thus, the limitations period should be tolled for the period between the start of the

22  limitations period, March 12, 2010 (resentencing) and the date of petitioner's conversation with

23  his son. Therefore, the limitations period ended one year after the April 2017 conversation

24  between petitioner and Adam Millner. Petitioner filed his original petition at Shasta County

25  Superior Court on November 13, 2017, well within the one-year period. Upon denial at each level

26  of state court review, petitioner ultimately submitted his petition to this Court on September 19,

27

28  ─────────────────
    [3]       No specific date is given for when this conversation took place besides "April
    2017." <u>See</u> ECF No. 1-1, pg. 5.

12

1  2018 without undue delay. Therefore, the petition before the Court is timely and respondent's

2  motion to dismiss should be denied.

3

4                                                **III. CONCLUSION**

5            Based on the foregoing, the undersigned recommends that respondent's motion to

6  dismiss (ECF No. 11) be denied.

7            These findings and recommendations are submitted to the United States District

8  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days

9  after being served with these findings and recommendations, any party may file written

10  objections with the court. Responses to objections shall be filed within 14 days after service of

11  objections. Failure to file objections within the specified time may waive the right to appeal.

12  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13

14

15  Dated:  May 18, 2020

16                                                _____

                                                DENNIS M. COTA

17                                                UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28